TOWN OF EDGARTOWN *vs.* EDGARTOWN WATER COMPANY
& another[1]
(and a companion case[2]).

Dukes County. March 2, 1993. - April 15, 1993.

Present: LIACOS. C J. NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Water Company. Municipal Corporations*, Water supply. *Public Utilities*,
Value.

In an action to establish the amount of money to be paid by a town for its
taking of the assets of a private water company, the judge, applying the
formula set forth in the special act incorporating the company, St.
1906, c. 146, properly included the company's retained earnings as in-
come and correctly found that the town owed nothing for the taking.
[33-35]

In an action to establish the amount of money to be paid by a town for its
taking of the assets of a private water company, the judge correctly
excluded the company's attorneys' fees and other cost of the litigation
from the obligations to be assumed by the town. [35]


CIVIL ACTION commenced in the Superior Court Depart-
ment on July 16, 1991.

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on October 16, 1991.

The cases were consolidated for trial in the Superior Court
Department and were heard by *John Paul Sullivan*, J.

The Supreme Judicial Court granted a request for direct
appellate review.

---

[1]A motion to intervene filed by Shawmut Bank, N.A., was allowed by
the trial judge.

[2]The town commenced an action in the Superior Court and another
action in the Supreme Judicial Court for the county of Suffolk. A single
justice of this court transferred the case to the Superior Court, see G. L.
c. 211, § 4A (1990 ed.), and ordered the cases consolidated.

*Reginald C. Lindsay* (*Sara Miron Bloom & Thomas A. Knowlton* with him) for Edgartown Water Company.

*Jeffrey Swope* (*Harvey Nosowitz, Ronald H. Rappaport,* Town Counsel, *& Russell Beck* with him) for the plaintiff.

NOLAN, J. This controversy arises out of the taking of the Edgartown Water Company (company), by the town of Edgartown (town). The dispute concerns the amount of money the town is required to pay the company for the takeover.

Following a trial of these consolidated cases (see note 2, *supra*) before a judge in the Superior Court, a judgment was entered, see Appendix A, and an appeal to the Appeals Court followed. We granted the company's application for direct appellate review. At issue are the following two questions: (1) whether the Superior Court judge erred in ruling that the town need pay nothing for its taking of the company, and (2) whether the judgment was correct in enjoining payment of legal and other expenses incurred by the company in connection with this litigation. We affirm the judgment.

1. *Price of the company.* The company is a private water company created by St. 1906, c. 143. The relevant portion of its charter is set forth in Appendix B. The charter provides that the town may take the corporate property and all rights and privileges of the company on payment of the "total actual cost of its franchise, works and property . . . including . . . interest on each expenditure from its date to the date of taking . . . at the rate of five per cent per annum" by purchase or otherwise on two-thirds vote of those present at a town meeting. St. 1906, c. 143, § 12. The formula set forth in the charter continues: "If the cost of maintaining and operating the works of said corporation shall exceed in any year the income derived from said works by said corporation for that year, then such excess shall be added to the total actual cost; and if the income derived from said works by said corporation exceeds in any year the cost of maintaining and operating said works for that year, then such excess shall be deducted from the total actual cost." *Id.*

Finally, the charter provides that in taking, the town shall assume all of the company's outstanding obligations, including the bonded indebtedness, authorized by the charter for purpose of the taking. The amount of the indebtedness assumed shall be deducted from the total amount to be paid by the town.

In 1991, the town exercised its right to take the water company and this lawsuit followed to determine the amount the town must pay the company. The judgment followed faithfully the charter provisions in providing that the total actual cost of the franchise, works, and property of the company is a negative figure of $1,985,722, which obligated the town to pay the company nothing.

The dispute between the parties centers on the formula for adjusting the total actual cost each year based on a comparison of income and expenses. As noted above, where the costs of operating and maintaining facilities exceeds income, the difference is added to the "total actual cost." Where income exceeds operating and maintenance expenses, the "total actual cost" is reduced accordingly.

In the latter circumstance, the question arises whether "income" includes dividends, interest and earnings retained or, simply, dividends and interest. The company argues in favor of the latter construction. Suffice to say that the "total actual cost" is less if retained earnings are included as income. We hold, however, that the judgment, which includes retained earnings as income, recognizes the proper limits of "income" set forth in the primordial case of *Tisbury* v. *Vineyard Haven Water Co.*, 193 Mass. 196 (1906), on which the judgment is calculated. The charter in *Tisbury* is strikingly similar to the charter in this case and the term "income" as used in arriving at "total actual cost" in *Tisbury* has been given the same meaning in the present case. Expert evidence also supported the meaning given to "income" by the judge and incorporated in the judgment.

The company argues for an overhaul of the holding in *Tisbury*, especially as to the interest factor. *Tisbury* provided for payment of simple interest, noting that there was "no

provision for compounding the interest." *Id.* at 198. The company's reliance on *Oxford* v. *Oxford Water Co.*, 391 Mass. 581 (1984), is misplaced because the language in the charter in *Oxford* is quite different.

In a word, the judgment is correct in following the method of calculation demanded · by the charter and approved in *Tisbury*.

2. *Legal fees*. The judgment excludes the Company's attorneys' fees and other cost of this litigation in calculating the purchase price and obligations to be assumed by the town. Costs of litigation, including attorneys' fees, are simply not part of the total "actual cost of [the company's] franchise, works and property." *Falmouth* v. *Falmouth Water Co.*, 180 Mass. 325, 333 (1902). We see no reason to change this rule.

*Judgment affirmed.*

### APPENDIX A.

#### *Judgment.*

"This action came on for trial before the Court, Sullivan, J., presiding, and the issues having been duly tried and findings having been duly rendered in the Memorandum of Opinion entered August 11, 1992.

"It is *ORDERED* and *ADJUDGED* that

"1. The total actual cost of the franchise, works, and property of the defendant, the Edgartown Water Company, owed [by] the plaintiff, the Town of Edgartown, pursuant to St. 1906, c. 143, § 12, at October 10, 1991, the date of the Town's vote to acquire the franchise, corporate property, and all the rights and privileges of the Company, is zero.

"2. The total actual cost of additions and reductions in the works and property of the Company after October 10, 1991, through the date of the completion of the Company's transfer to the Town of the franchise, corporate property, and all the rights and privileges of the Company, shall be determined consistently with the decisions set out in the Memorandum of Opinion.

"3. The Town shall take immediate possession of the franchise, corporate property, and all the rights and privileges of the Company. The Company shall execute such documents and take such steps as are necessary to effectuate such transfer, including, but not limited to, turning over to the Town all relevant books and records. (The provisions of this paragraph are

stayed until 4:00 p.m. of the date following the next sitting of a Single Justice.) The Town and the Company shall file with this Court, within five business days from the date hereof or on 4:00 p.m. of the day following the next sitting of the Single Justice, whichever is later a joint stipulation stating that such transfer of possession, and the transfer permitted in paragraph six of this Judgment, have been completed.

"4. At the date of the completion of such transfer, the Town shall assume all of the outstanding obligations of the Company which relate to maintaining the works of the Company, except that the debt due to the intervenor-defendant, Shawmut Bank, N.A. shall be reduced by the amount of $229,771.91 (representing the legal, accounting, consulting, and other fees of the Company through October 10, 1991, in connection with this matter), and such additional amount of legal, accounting, consulting, and other fees paid after October 10, 1991, and before the date of completion of such transfer, by the Company in connection with this matter. The obligation assumed by the Town to the Bank is further reduced by the amount of funds seized by the Bank on or about August 3, 1992, and all funds paid to the Bank by the Company after July 8, 1992.

"5. The amount of the debt to the Bank that is not assumed by the Town, shall remain the debt of the Company to the Bank pursuant to the terms of the Memorandum of Decision.

"6. The Company is enjoined from conveying any of its real estate located in Edgartown, Massachusetts, except to the Town pursuant to paragraph three of this Judgment.

"7. All payments and evidence of obligations received by the Company subsequent to the transfer to be made pursuant to paragraph three shall be forwarded to the Town within two business days of receipt by the Company. The Company shall take whatever steps are necessary to assign to the Town the Company's rights and duties in such payments and obligations.

"8. Prior to the filing in this Court of the stipulation described in paragraph three of this Judgment, the Company is enjoined from making any payments from, or other dispositions of, any corporate property without the prior approval of the Town. (However, the Company may incur any reasonable legal fees and expenses specifically associated with the preparation for and appearance before the Single Justice.)

"9. The Town's claim for relief pursuant to G. L. c. 93A is *DENIED.*

"10. This Court shall retain continuing jurisdiction of this matter until a joint stipulation is filed pursuant to paragraph three of this Judgment, or until further order of this Court."

### APPENDIX B.

#### *Company's Charter.*

St. 1906, c. 143, § 12, provides in part: "The town of Edgartown shall have the right, at any time during the continuance of the charter hereby granted, to take, by purchase or otherwise, the franchise, corporate property and all the rights and privileges of said corporation, on payment to said corporation of the total actual cost of its franchise, works and property of any kind held under the provisions of this act, including in such cost interest on each expenditure from its date to the date of taking, as hereinafter provided, at the rate of five per cent per annum. If the cost of maintaining and operating the works of said corporation shall exceed in any year the income derived from said works by said corporation for that year, then such excess shall be added to the total actual cost; and if the income derived from said works by said corporation exceeds in any year the cost of maintaining and operating said works for that year, then such excess shall be deducted from the total actual cost. The town, on taking as herein provided the property of said corporation, shall assume all of its outstanding obligations, including the bonds authorized in this act; and the amount thus assumed shall be deducted from the total amount to be paid by said town to said corporation. . . ."